Clarence WILSON, Plaintiff-Appellant,

v.

ST. LOUIS–SAN FRANCISCO
RAILWAY COMPANY,
Defendant-Appellee.

No. 80–2045.

United States Court of Appeals,
Tenth Circuit.

March 29, 1982.

Samuel I. McHenry, Kansas City, Mo., for plaintiff-appellant.

Edward W. Mullen of Deacy & Deacy, Kansas City, Mo., Gerald L. Rushfelt of Rushfelt, Mueller, Druten & Moran, Overland Park, Kan., and Derek E. Wood of Deacy & Deacy, Kansas City, Mo., with him on the brief, for defendant-appellee.

Before SETH, Chief Judge, LOGAN and SEYMOUR, Circuit Judges.

LOGAN, Circuit Judge.

In this civil rights action, Clarence Wilson appeals from the trial court's grant of summary judgment in favor of the defendant, St. Louis-San Francisco Railway Company. The trial court found that Wilson had failed to comply with filing procedures required by 42 U.S.C. § 2000e–5(c).

In May 1972 Wilson, a black male, applied unsuccessfully to the railroad for employment. Immediately thereafter, Wilson filed a complaint with the Equal Employment Opportunity Commission (EEOC), charging the railroad with racial discrimination in violation of Title VII and 42 U.S.C. § 1981. In early June, pursuant to its regulations and the deferral procedures of 42 U.S.C. § 2000e–5(c), the EEOC referred Wilson's charge to the Kansas Commission on Civil Rights. Later that month, according to the Kansas Commission, one of its field representatives contacted Wilson and informed him of his rights under the Kansas Act Against Discrimination, Kansas Stat.Ann. §§ 44–1001 to –1043, but Wilson declined to file a complaint under that act. The Kansas Commission then terminated its investigation.

After sixty days had passed from the time of its referral of Wilson's charge to the Kansas Commission, the EEOC advised Wilson it would begin to investigate his charges. Nearly three years later, in 1975, the EEOC informed Wilson he had met all

"timeliness, deferral and other jurisdictional requirements" and that there was reasonable cause to believe Wilson had been denied employment due to discriminatory employment practices. After the EEOC issued Wilson a right-to-sue notice in 1977, he brought this action seeking declaratory relief, employment, and damages. The trial court granted the railroad's motion for summary judgment, holding that the statute of limitations barred Wilson's claim under 42 U.S.C. § 1981 and that Wilson's failure to cooperate with the Kansas Commission barred his Title VII claim. Wilson appeals the latter holding.

■ When an allegedly unlawful employment practice occurs in a state that has both a law prohibiting the practice and an agency established to grant relief, 42 U.S.C. § 2000e–5(c) declares that a person may not file a charge with the EEOC until sixty days after commencement of proceedings with the state agency. The purpose of this procedure is to give state agencies an opportunity to resolve employment discrimination problems and render unnecessary any resort to federal relief. *Voutsis v. Union Carbide Corp.*, 452 F.2d 889, 891–92 (2d Cir. 1971); *cf. Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 755–56, 99 S.Ct. 2066, 2071, 60 L.Ed.2d 609 (1979) (discussing an identical provision in the Age Discrimination in Employment Act, 29 U.S.C. § 633). In *Love v. Pullman Co.*, 404 U.S. 522, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972), the Supreme Court held that section 2000e–5(c)'s requirements are met when an individual files a complaint with the EEOC, which refers the complaint to the state agency and delays its own investigation until sixty days have elapsed or the state agency has indicated it will take no action. In the instant case, the EEOC referred Wilson's complaint to the Kansas Commission and then delayed its investigation until sixty days had elapsed. Following the Supreme Court's holding in *Love*, we conclude that the EEOC referral of Wilson's complaint to the Kansas Com-

mission "commenced" the action under state or local law and met the requirements of section 2000e–5(c). *See Mohasco Corp. v. Silver*, 447 U.S. 807, 816, 100 S.Ct. 2486, 2491, 65 L.Ed.2d 532 (1980) ("[S]tate proceedings were instituted by the EEOC when it immediately forwarded [complainant's] letter to the state agency.... [W]e treat the state proceedings as having been instituted on that date.")

The trial court held that even if Wilson technically complied with section 2000e–5(c), this was not enough because his subsequent refusal to file a complaint with the Kansas Commission deprived it of any meaningful opportunity to investigate his claim. While the statute requires that states have an opportunity to investigate an individual's complaint, the facts in the record before us do not justify summary judgment in favor of the railroad based upon a conclusion that Wilson interfered or refused to cooperate with a state investigation. In an affidavit filed in opposition to the railroad's motion, Wilson stated he did not recall being contacted by a representative of the Kansas Commission, and he did not knowingly decline to file a complaint. Even if a representative did contact him, unless Wilson was told he needed to cooperate with the state agency, he reasonably could have declined to file with the Kansas Commission because he had already properly commenced a proceeding by his filing with the EEOC. Nothing in the record indicates that either the EEOC or the Kansas Commission ever informed Wilson that to preserve his rights under Title VII, he had to file a complaint with the Kansas Commission.[1] The Supreme Court has announced as "a guiding principle for construing the provisions of Title VII," that "a technical reading would be 'particularly inappropriate in a statutory scheme in which laymen, unassisted by trained lawyers, initiate the process.'" *Zipes v. Trans World Airlines, Inc.*, —— U.S. ——, ——, 102

---

1. The only evidence on this question is a letter from a compliance supervisor of the Kansas Commission to the EEOC stating: "A Field Representative has contacted the complainant and was apprised of the provisions of the Kansas Act Against Discrimination. He did not wish to file a complaint alleging a violation of the K.A.A.D."

 

S.Ct. 1127, 1134, 71 L.Ed.2d 234 (1982) (quoting *Love*, 404 U.S. at 527, 92 S.Ct. at 619).

The railroad asks us to affirm the court's grant of summary judgment on the alternative ground, not considered by the trial court, that Wilson did not establish a prima facie case of discrimination. To carry the burden of establishing a prima facie case, Wilson attempted to show, by use of the railroad's hiring statistics for 1971–73, that the railroad's employment criteria had a disparate impact on minority hiring. *See EEOC v. Navajo Refining Co.*, 593 F.2d 988, 990 (10th Cir. 1979). Wilson alleged those statistics establish that between 1971 and 1973 the railroad hired 32.3% of all white applicants but hired only 14.4% of all black applicants. The railroad contends that only the hiring statistics for 1972 and 1973 are relevant,[2] and that they show minority hiring for those years approximated the hiring of white applicants; therefore, its hiring practices for those years had no disparate impact.

■ We are generally reluctant to affirm a trial court's decision on legal grounds not considered by the trial court, and will do so only when the facts are sufficiently clear to permit our determination. *Lindsey v. Dayton-Hudson Corp.*, 592 F.2d 1118, 1124 (10th Cir.), *cert. denied*, 444 U.S. 856, 100 S.Ct. 116, 62 L.Ed.2d 75 (1979). In this case the railroad's 1971 hiring practices, if admitted into evidence, might establish a prima facie case for Wilson. The determination whether evidence is relevant is committed to the discretion of the trial court, *Texas Eastern Transmission Corp. v. Marine Officer-Appleton & Cox Corp.*, 579 F.2d 561, 566 (10th Cir. 1978), and should be decided by that court.

**2.** Relying on *Neloms v. Southwestern Elec. Power Co.*, 440 F.Supp. 1353, 1369 (W.D.La. 1977), the railroad argues that the 1971 hiring statistics are inadmissible as a matter of law because only statistics reaching back 180 days prior to the railroad's denial of Wilson's job application are relevant. To the extent that *Neloms* establishes the 180–day period as a rule of law, we disagree with its holding.

The railroad also contends that because it alleged in its motion for summary judgment

We reverse and remand for further proceedings consistent with this opinion.

that its 1971 hiring statistics were irrelevant, and because Wilson in his response did not explicitly deny the railroad's allegation, Wilson has admitted they are irrelevant. However, we do not construe Wilson's failure to disagree with the railroad's allegation as an admission, particularly when Wilson relied on the 1971 statistics in his response to the railroad's summary judgment motion.