**Crystal A. CLARK, Plaintiff,**

v.

**Marvin T. RUNYON, Defendant.**

**No. 98 C 2076.**

United States District Court,
N.D. Illinois,
Eastern Division.

April 14, 1998.

Crystal A. Clark, Glendale, AZ, pro se.

Carole Judith Ryczek, Asst. U.S. Atty., U.S. Atty's Office, Chicago, IL, for Defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

This action, recently transferred from the District of Arizona to this judicial district pursuant to 28 U.S.C. § 1404(a),[1] has been assigned at random to this Court's calendar. This memorandum opinion and order is issued sua sponte to address a number of problems disclosed by the transferred file.

■ To begin with, the file reflects that pro se plaintiff Crystal Clark ("Clark") has never sought or obtained proper service on defendant Postmaster General Marvin Runyon ("Runyon") in the more–than–14–month period since Clark originally filed this action on February 7, 1997. And there is no question that Clark has been aware of that defect for many months: Assistant United States Attorney Cynthia Parsons pointed it out in the government's May 16, 1997 Motion for Change of Venue, and it formed part of the basis for District Judge Roger Strand's June 5, 1997 denial of Clark's ill-conceived motion for a default judgment, together with his vacation of Clark's equally ill-conceived obtaining of a default order from the Arizona District Clerk's Office.

It is thus plain that Clark has not complied with the time limit for service of process specified in Fed.R.Civ.P. ("Rule") 4(m):

> If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected

---

1. All further references to Title 28's provisions will simply take the form "Section—."

within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

And it is equally plain that Rule 4(i) sets out, with precision and using language that should be clear to any nonlawyer as well as to any lawyer, the method for obtaining service on the United States or on any officer of the United States such as Runyon. In that respect, no less an authority than the unanimous United States Supreme Court has announced that the generous reading that is to be given to pleadings filed by pro se litigants (*Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)(per curiam)) does *not* extend to excusing failures by such litigants to conform to clearly-spelled-out procedural requirements (*McNeil v. United States*, 508 U.S. 106, 113, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993)(footnotes omitted)):

> It is no doubt true that there are cases in which a litigant proceeding without counsel may make a fatal procedural error, but the risk that a lawyer will be unable to understand the exhaustion requirement is virtually nonexistent. Our rules of procedure are based on the assumption that litigation is normally conducted by lawyers. While we have insisted that the pleadings prepared by prisoners who do not have access to counsel be liberally construed, see *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), and have held that some procedural rules must give way because of the unique circumstance of incarceration, see *Houston v. Lack*, 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988) (*pro se* prisoner's notice of appeal deemed filed at time of delivery to prison authorities), we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without coun-

sel. As we have noted before, "in the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law." *Mohasco Corp. v. Silver*, 447 U.S. 807, 826, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980).

Under the circumstances, Clark is ordered to file a brief memorandum in this Court's chambers on or before April 30, 1998 stating why she believes that this Court should not enter an order in accordance with Rule 4(m) dismissing this action without prejudice. As Rule 4(m) itself recognizes, of course, Clark's memorandum may also set out any claim that she may have as to the existence of good cause for her failure to have served Runyon properly before now.

Because any dismissal that might be ordered by this Court under Rule 4(m) is required to be entered without prejudice, this opinion will proceed to identify some patent jurisdictional defects in the existing Complaint.[2] Those defects are obviously matters that Clark would have to bear in mind if the action were in fact dismissed and if she were then to try again via a new filing.

Although Clark's first claim for relief is based on asserted employment discrimination, as to which Complaint ¶¶ 47–50 set out her asserted compliance with the administrative preconditions to her bringing suit on such a claim, none of her other seven claims for relief (which are referred to here for convenience in the form "Claim—") passes muster. It should first be observed that Clark ascribes no improper conduct to Postmaster General Runyon personally, so that this lawsuit must be understood to be brought as an official-capacity action. And of course that "official capacity" term is just another way of saying that the action is brought against the government for which

---

**2.** This Court always undertakes an immediate review of newly-filed complaints; see *Wisconsin Knife Works v. National Metal Crafters*, 781 F.2d 1280, 1282 (7th Cir.1986):

> The first thing a federal judge should do when a complaint is filed is check to see that federal jurisdiction is properly alleged.

That responsibility devolves on this Court as a continuing matter, even though Judge Strand did not address such subject matter jurisdictional problems before he ordered the Section 1404(a) transfer.

Postmaster General Runyon works: the United States itself.

 In that light:

1. Claim 2 (Complaint ¶¶ 53–54) is made under 42 U.S.C. § 1981. But even though a federal official who acts wrongfully under color of federal law may be liable under that section, the absence of any assertion that Runyon himself was guilty of any malfeasance dooms that claim.

2. Claim 3 (Complaint ¶¶ 55–56) purports to be advanced under the Illinois Civil Rights Act. But under the doctrine of sovereign immunity, the United States (and this also embraces Runyon in his official capacity) may be sued only if and to the extent that it has *consented* to be sued. No such consent has been given to actions under that Illinois statute. And although the United States has consented to be sued in certain situations covered by the Federal Tort Claims Act (28 U.S.C. §§ 2671–2680), Clark has unquestionably not complied with the preconditions to bringing such an action.

3. Claim 4 (Complaint ¶ 57) attempts to invoke the equal protection and due process clauses of both the Illinois and the United States Constitutions. As for the former, what has just been said as to Claim 3 precludes any such claim. As to the latter, even if Clark could assert a *Bivens*-type claim against Runyon, again her failure to set out any individualized allegations of wrongdoing on his part would be fatal to such a claim.

4. Claim 5 (Complaint ¶ 58) asserts a violation of the Illinois public policy against discrimination. What has earlier been said as to Claim 3 forecloses such a claim as well.

5. Claim 6 (Complaint ¶¶ 59–61) alleges a breach of a common law covenant of good faith and fair dealing. Again the United States' (and hence Runyon's) sovereign immunity requires the rejection of that claim.

6. Claim 7 (Complaint $62) advances still another common law claim, this time charging intentional infliction of emotional distress. What has been said earlier knocks out that claim as well.

7. Finally, Claim 8 (Complaint ¶ 63) alleges that the conduct of which Clark complains, which caused her to quit her employment, "constitute[d] a constructive discharge in violation of Public Policy." To the extent that such a contention comes within Clark's complaint filed with the federal EEOC, it does not advance a separate claim. And to the extent that it does not, it is flawed for the same reasons that have been set out as to her other common law claims. So Claim 8 must be dismissed either way.

For the reasons just outlined, Claims 2 through 8 are now stricken, whether or not Rule 4(m) may hereafter be invoked by this Court for a total dismissal of the Complaint.

Finally, this Court is contemporaneously issuing the type of order that it typically promulgates in every newly-filed or newly-assigned case, establishing an initial status hearing. Because Clark resides in Arizona, that status hearing has been set at a time of day when it can be conducted on a telephonic basis, with Clark having the responsibility for placing the call to this Court's courtroom (312–435–5766). This Court is also providing a copy of this memorandum opinion and order to the United States Attorney's Office in this judicial district, so that some representative of that office will be expected to attend the status hearing.