**BETH ROCHEL SEMINARY, Plaintiff,**

v.

**William J. BENNETT, et al.,
Defendants,**

**United States of America,
Intervenor-Defendant.**

**Civ. A. No. 84–2062.**

United States District Court,
District of Columbia.

Dec. 19, 1985.

Michael B. Goldstein, James M. McElfish, Jr., Blain B. Butner, Dow, Lohnes & Albertson, Washington, D.C., for plaintiff.

A. Patricia Frohman, Asst. U.S. Atty., Washington, D.C., for intervenor-defendant.

## OPINION

JUNE L. GREEN, Senior District Judge.

Plaintiff brings this action seeking a declaratory judgment that the United States Department of Education ("ED") acted without authority when it determined that plaintiff did not satisfy the statutory definition of an institution of higher education pursuant to section 1201(a) of the Higher Education Act of 1965, as amended ("HEA"), 20 U.S.C. § 1141(a) (1985),[1] for the period of November 1980 through December 1981. Plaintiff also seeks an injunction barring the ED from requiring plaintiff to repay student aid funds disbursed to plaintiff under the Pell Grant Program, 20 U.S.C. § 1070a (1985), for the 1980–81 academic year. Intervenor-defendant United States of America counterclaims against plaintiff for the $52,268.00 disbursed to the plaintiff under the Pell Grant Program for the 1980–81 academic year, plus interest. Before the Court are cross-motions for summary judgment. For the reasons stated below, the Court grants de-

---

1. This opinion will cite to Title 20 (in the form "section ___"), rather than to HEA's internal numbering.

fendants' motion for summary judgment and denies plaintiff's motion for summary judgment.

## I. *Statement of Facts*

Beth Rochel Seminary ("Beth Rochel") is a private, not-for-profit educational institution for Jewish women located in Monsey, New York. Since 1973, Beth Rochel has offered postsecondary education in Judiac studies and currently has certificate programs in Religious Education and Teachers Education. Plaintiff's Statement of Material Facts Not in Dispute ("Plaintiff's Statement") ¶¶ 1, 2.

In order for a student attending Beth Rochel to receive student financial assistance under the student financial assistance programs authorized by Title IV of the HEA, sections 1070 *et seq.* (1985), Beth Rochel must qualify as an eligible "institution of higher education." That term, for a private nonprofit educational institution, is defined in section 1141(a) (1985).

Beth Rochel is not accredited by an agency or association recognized by the ED. Plaintiff's Statement ¶ 3. However, if an institution satisfies the requirements of the provisions of section 1141(a)(1) through (a)(4), it may still qualify as an eligible institution of higher education if it can meet the requirements of section 1141(a)(5)(B). That section provides:

> The term "institution of higher education" means an educational institution in any State which
>
> \* \* \* \* \* \*
>
> [if not accredited,] is an institution whose credits are accepted on transfer, by not less than three institutions which are so accredited, for credit on the same basis as if transferred from an institution so accredited.

The statutory definition was carried forward in the duly promulgated regulations published in the Code of Federal Regulations. The regulation defines an eligible institution under the 3IC method as:

> An institution whose credits are determined by at least three accredited institu-

tions on the same basis as transfer credits from fully accredited institutions.

34 C.F.R. § 668.2(a)(5)(iv). This alternative to accreditation is known as the "three-institutional-certification method alternative to accreditation" or the "3IC method."

The Office of Education of the Department of Health, Education, and Welfare (the predecessor of the ED) published a rule in the Federal Register of August 20, 1970, 35 Fed.Reg. 13324 ("August 20, 1970, rule"), setting forth the procedures that an unaccredited institution must follow to qualify as an eligible institution of higher education under the above statutory provision. The rule provides in pertinent part:

> The U.S. Commissioner of Education hereby adopts the following procedure by which an unaccredited institution may meet the alternative requirement ... of being an institution whose credits are accepted on transfer by not fewer than three institutions which are accredited by a nationally recognized accrediting agency or association on the same basis as if transferred from an accredited institution. This alternative is referred to as "three-institutional-certification."
>
> \* \* \* \* \* \*
>
> *Procedure for institutional qualification under three-institutional-certification method.* (a) To initiate the procedure an applicant unaccredited institution must submit to the U.S. Commissioner of Education: (1) The names and addresses of not fewer than three institutions of higher education accredited by an accrediting agency or association currently listed in the FEDERAL REGISTER as being nationally recognized agencies or associations, each of which while so accredited and not more than 5 years prior to such submission has accepted the transfer credits (and continues to accept such credits) earned at such unaccredited institution; and (2) the names and dates of transfer of their credits, of at least three students or graduates of the applicant unaccredited institution who have subsequently been enrolled in each of such accredited institutions.

On June 12, 1979, plaintiff applied to have its eligibility determined as a private nonprofit institution of higher education under the 3IC method. Defendants' Statement of Material Facts Not in Dispute ("Defendants' Statement") ¶ 3. In accordance with the requirements set forth in the August 20, 1970, rule, plaintiff stated on its application that Hofstra University, Adelphi College, and Touro College accepted Beth Rochel credits on transfer on the same basis as they accepted credits on transfer from accredited institutions. Plaintiff further provided, as required by the August 20, 1970, rule, the names of the Beth Rochel students whose credits were accepted on transfer by the accredited institutions and the dates of transfer. Defendants' Statement ¶ 3.

Adelphi College, Hofstra University, and Touro College indicated that they accepted the credits on transfer of students attending Beth Rochel on the same basis as they accepted the credits of students transferring from accredited institutions. Each also indicated that the listed students enrolled at that institution. Defendants' Statement ¶¶ 3, 4. On the basis of these representations, plaintiff was determined to be an eligible institution of higher education and was so notified by letter dated October 19, 1979. Defendants' Statement ¶ 5.

On November 29, 1979, the ED received a letter from Hofstra University which indicated that contrary to its October 9, 1979, letter, the three listed students from Beth Rochel never enrolled in Hofstra University. Since these three students failed to enroll in Hofstra University, plaintiff failed to qualify as an eligible institution under the August 20, 1970, rule. By letter dated December 13, 1979, the ED informed plaintiff that it failed to qualify as an eligible institution and was never eligible. The letter informed plaintiff that the reason for its failure to qualify was that its former students did not enroll at Hofstra University. Defendants' Statement ¶¶ 6, 7.

In a second application dated October 15, 1980, plaintiff reapplied for institutional eligibility under the 3IC method. In this application, plaintiff substituted Marywood College for Hofstra University and stated that Marywood College, Touro College, and Adelphi University accepted its credits on transfer on the same basis as they accepted the credits on transfer of students transferring from accredited institutions. Plaintiff's Statement ¶ 8. In its application, plaintiff provided the names of the students whose credits were accepted on transfer and the dates of transfer. Defendants' Statement ¶ 8.

The ED contacted each of these institutions using a form verification letter. The form requested, "Please verify from your official records that the following students and credits from the unaccredited postsecondary institution cited above have been accepted upon transfer by your accredited postsecondary institution on the same basis as if they were transferred from an accredited college or university." Touro College, Marywood College, and Adelphi University answered the question in the affirmative, and each verified that "the items checked above represent the true practice of this accredited institution." Plaintiff's Statement ¶¶ 9, 10.

On November 17, 1980, the ED certified plaintiff as an eligible institution for a period of three years. As a result of this certification, financially qualified Beth Rochel students became eligible to apply for Basic Educational Opportunity Grants under Title IV of the HEA. In the spring of 1981, plaintiff submitted to the ED student eligibility reports for 32 of its students who qualified for federal financial aid awards. Plaintiff received $52,268 in aid funds, which it then disbursed. Plaintiff's Statement ¶¶ 11, 12.

In October 1981, Joseph M. Hardman, Chief of the College Eligibility Unit within the Office of Postsecondary Education of the ED, wrote Touro College to inquire whether the Beth Rochel students accepted on transfer by Touro had also enrolled and attended at Touro following their admission. By letter dated November 9, 1981, Norman Twersky, Dean of Admissions of

Touro College, confirmed that the Beth Rochel students had been "duly accepted." Dean Twersky advised that the students did not, however, register or attend Touro College. Plaintiff's Statement ¶¶ 13, 14.

Upon receipt of Dean Twersky's letter, the ED notified plaintiff, by letter dated December 13, 1981, that it failed to qualify as an eligible institution of higher education and had never so qualified because the three students never enrolled at Touro College in accordance with the requirements of the August 20, 1970, rule. Plaintiff's Statement ¶ 15.

Based on its determination in December 1981, that plaintiff never qualified under the 3IC method as an eligible institution, the ED requested on July 13, 1982, that Beth Rochel repay the student financial aid funds it had requested and received, plus interest. Defendants' Statement ¶¶ 12, 15, 16, 17. Beth Rochel officials subsequently met with the Under Secretary of the ED, the Assistant Secretary for Postsecondary Education and the Director of Eligibility and Agency Evaluation to appeal its loss of eligibility and liability. Plaintiff's attorney twice requested the Assistant Secretary for Postsecondary Education to review the original determinations of its loss of eligibility and liability. Each time the Assistant Secretary acceded to that request and carried out that re-evaluation. Plaintiff's Statement ¶¶ 19, 20.

Defendants recertified plaintiff on September 12, 1983, under the 3IC method as eligible to participate in student financial aid programs under Title IV. Beth Rochel is presently recognized as an eligible institution and is drawing and disbursing federal financial aid funds to its students. Plaintiff's Statement ¶ 18.

Plaintiff attacks defendants' actions revoking Beth Rochel's institutional eligibility and demanding repayment of student financial aid funds along a wide front. They argue that the ED's actions were contrary to the statute and regulation thereunder, i.e., section 1141(a) and 34 C.F.R. § 668.2; that defendants' action was arbitrary and capricious; that the August

20, 1970, rule is substantively and procedurally defective; and that defendants' actions violated due process and applicable ED procedures. The Court addresses each issue below.

## II. Conclusions of Law

### A. Section 1141(a)

■ In 1965 Congress enacted the HEA of 1965, sections 1001 et seq. This legislation established certain student financial aid programs and created a comprehensive system for administering those programs. Congress was concerned with providing student financial aid to a broad range of postsecondary institutions. At the same time, Congress sought to ensure that federal aid funds went only to support educational institutions of high academic calibre. To that end, section 1141(a) was promulgated, establishing the 3IC method of eligibility. The 3IC method permits students at nontraditional or specialized postsecondary educational institutions to participate in federal student aid programs by providing an alternative means of determining the academic quality of education offered there. S.Rep. No. 673, 89th Cong., 2d Sess., reprinted in 1965 U.S.Code Cong. & Adm.News 4027, 4067.

From November 17, 1980, to December 7, 1981, plaintiff did not qualify as an eligible institution of higher education under the statutory definition of that term set forth in section 1141(a)(5)(B). Three Beth Rochel students applied for admission to Touro College, and they were accepted. These students, however, did not actually transfer to Touro College. That is, they never enrolled and took classes at Touro College. Indeed, the three 'Beth Rochel students who were listed as having transferred to Touro College, remained as students at Beth Rochel.

Section 1141(a)(5)(B) and 34 C.F.R. § 668.2(a)(5)(iv) clearly state that an eligible institution is one whose credits are "... accepted on transfer...." Touro College accepted the three Beth Rochel students as prospective undergraduates only. Touro College was prepared to accept the aca-

demic credits that these three individual students earned at Beth Rochel but could do so only if these accepted students actually transferred, *i.e.*, enrolled there. Touro College could not apply the Beth Rochel credits toward the "transferee" students' degree requirements unless they actually moved from Beth Rochel to Touro College.

The Court finds that this is the only reading of section 1141(a)(5)(B) that is consistent with the HEA's concern with the quality of education provided by postsecondary institutions. 1965 U.S.Code Cong. and Adm.News at 4067. The interpretation urged by plaintiff that mere acceptance of a student, without transfer, as that term is commonly understood, is sufficient to meet the 3IC requirements, is contrary to the words of the statute.

Congress must have considered that an accredited institution would scrutinize carefully the educational quality of an unaccredited institution when it determined whether to accept the credits of a student transferring from that institution on the same basis as it accepts credits of students transferring from an accredited institution. When a school accepts the credits of a transferring student, it does so for the purpose of counting those credits towards satisfying its degree requirements. To prevent its degree from being cheapened and its reputation or prestige from being tarnished, an institution of higher learning would make a careful evaluation of the credits being transferred, as well as the institution the student is transferring from, before accepting those credits, especially if that institution is unaccredited.

### B. *The August 20, 1970, Rule*

The details for implementing the 3IC accreditation method were spelled out in the August 20, 1970, rule. 35 Fed.Reg. 13324. The purpose of the procedure was set forth in the third paragraph of the rule:

> The procedure set forth herein has as its objective the verification of the fact that the credits earned in an unaccredited institution of higher learning actually have been and are regularly accepted on trans-

fer by not less than three educational institutions which are directly accredited by nationally recognized accrediting agencies or associations, on the same basis as if transferred from an institution so accredited.

Under the procedure set out in the August 20, 1970, rule, an applicant unaccredited institution must include in its application the names of at least three accredited institutions that accept its credits on transfer on the same basis as they accept the credits on transfer of students transferring from accredited institutions. Additionally, in order to give meaning to the statutory term "on transfer," the rule requires submission of,

> (2) [T]he names and dates of transfer of their credits, of at least three students or graduates of the applicant unaccredited institution who have subsequently been enrolled in each of such accredited institutions.

■ Plaintiff argues that defendants' interpretation of the August 20, 1970, rule is inconsistent with section 1141(a)(5)(B) and 34 C.F.R. § 668.2(a)(5)(iv) insofar as the August 20, 1970, rule adds an enrollment requirement. It is well settled that an agency's "interpretation of [a] statute cannot supersede the language chosen by Congress." *Mohasco Corp. v. Silver*, 447 U.S. 807, 825, 100 S.Ct. 2486, 2496, 65 L.Ed.2d 532 (1980); *see also Morton v. Ruiz*, 415 U.S. 199, 237, 94 S.Ct. 1055, 1075, 39 L.Ed.2d 270 (1974) (agency interpretation must be consistent with congressional purpose, as well as language). It is also well settled that "the construction of a statute by those charged with its execution should be followed unless there are compelling indications that it is wrong." *Red Lion Broadcasting Co. v. FCC*, 395 U.S. 367, 381, 89 S.Ct. 1794, 1801, 23 L.Ed.2d 371 (1969). The Court finds that the August 20, 1970, rule, is perfectly consistent with the language of section 1141(a)(5)(B) and 34 C.F.R. § 668.2(a)(5)(iv) and well in keeping with Congress' purpose of assuring that student financial assistance be directed to-

ward postsecondary institutions of recognized quality. *Supra* at 915–916.

Plaintiff presses on, claiming that the August 20, 1970, rule is procedurally defective since it was never published as a proposed rule, was not subject to public comment, and was not submitted to Congress for review under 20 U.S.C. § 1232 (1985). All these contentions must fail.

■ In August of 1970, the Office of Education was subject to the rulemaking requirements of the Administrative Procedure Act ("APA"), 5 U.S.C. § 553 (1985). The August 20, 1970, rule was exempt from the general notice provision of 5 U.S.C. § 553(b) as "[a] matter relating to agency management or personnel or to public property, loans, *grants, benefits* or contracts." 5 U.S.C. § 553(a)(2) (emphasis added).

Plaintiff cites *Guardian Federal Savings and Loan Association v. Federal Savings and Loan Insurance Corp.*, 589 F.2d 658 (D.C.Cir.1978) and *Vigil v. Andrus*, 667 F.2d 931 (10th Cir.1982) in an effort to show that the August 20, 1970, rule did not come with the "grants and benefits" exception of 5 U.S.C. § 553(a)(2). The *Guardian* case is inapposite as it dealt with the "contract" exception to 5 U.S.C. § 553. The *Andrus* case concerned a regulation regarding free lunches for Indian children which was not published and did not become effective until after the Department of the Interior had adopted voluntarily an internal rule requiring agency compliance with 5 U.S.C. § 553 rulemaking provisions regarding changes in grants, benefits, and contracts. By contrast, the August 20, 1970, rule was published and took effect before the ED issued a similar internal rule on October 12, 1970, requiring compliance with APA procedures for grants and benefits.

■ Plaintiff further claims that the August 20, 1970, rule did not amount to a "rule" because it was captioned "Procedures" and was published in the notice section of the *Federal Register*. Under the definition section of the APA, 5 U.S.C. § 551(4), the term "rule" is defined as follows:

> "rule" means the whole or part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency....

5 U.S.C. § 551(4). The August 20, 1970, rule involved a statement of general applicability and future effect designed to implement and interpret section 1141(a)(5)(B). It thus qualifies as a rule under 5 U.S.C. § 551(4).

■ Furthermore, since adoption and publication of the August 20, 1970, rule, Congress has made three major revisions of the HEA, in the Education Act Amendments of 1972, Pub.L. No. 92–318; Education Act Amendments of 1976, Pub.L. No. 94–482, and Education Act Amendments of 1980, Pub.L. No. 96–374. In none of these revisions has Congress sought to alter the August 20, 1970, rule, or deemed it necessary to clarify or change the words in the statute setting forth the 3IC method in section 1141(a)(5)(B). It is hornbook law that reenactment of a statute by Congress without change approves and adopts the prior administrative construction. *See* annotation at 39 L.Ed.2d 942, 975, and cases cited therein. Finally, the requirement that ED rules and regulations be submitted for congressional review was not added until enactment of the Education Amendments of 1974. Pub.L. No. 93–380, § 509(a)(2), 88 Stat. 567–568.

## C. *Plaintiff's Due Process Rights*

■ The ED mistakenly certified plaintiff as an eligible institution in November 1980, relying upon representations made by Touro College that the three Beth Rochel students actually enrolled there. More than $52,000 in student financial aid funds were then disbursed to Beth Rochel. Touro College later notified the ED that the Beth Rochel transfer students listed pursuant to the August 20, 1970, rule never, in fact, attended Touro College. Plaintiff was

notified promptly that it was never an eligible institution under section 1141(a)(5)(B) because the three listed students never enrolled at Touro College. In addition, the ED requested that plaintiff repay the student aid funds disbursed subsequent to this mistaken certification. Plaintiff asserts a property interest in the funds it received and claims that the sudden revocation of its eligible institution status without an opportunity for a hearing was a violation of its due process rights.

The determination that plaintiff failed to satisfy the definition of the term "institution of higher education" is not a "termination" requiring a "hearing on the record" as called for in section 1094(b)(1)(D); *see also* 34 C.F.R. § 668.71(c)(1) (no right to notice and hearing for failure to meet eligibility requirements of section 1141). Nevertheless, Beth Rochel officials did meet with ED officials who entertained several appeals concerning Beth Rochel's loss of eligibility and liability. *Supra* at 915.

The Court finds the application and verification forms issued by the ED in October 1980, were somewhat unclear in setting out the requirements for 3IC eligibility. The Court also notes that ED officials were concerned enough to clarify later 3IC verification forms to note expressly the requirement that transfer students enroll and attend classes. *See* Plaintiff's Exhibits 13, 18, 19. None of this, however, provides plaintiff any defense. Significantly, plaintiff had applied for 3IC eligibility once before, in 1979, and was rejected for the same reason that plaintiff's eligibility was revoked in 1981. In 1979, the ED was advised that the three students who were listed as having transferred to Hofstra University never enrolled there. *Supra* at 914.

Plaintiff had been through the 3IC process once before and was familiar with the various forms and requirements. Beth Rochel's 3IC eligibility was rejected by the ED for the same reason in 1981 as in 1979. It is clear, therefore, that there is no basis to plaintiff's claims that defendants acted arbitrarily and capriciously in retroactively imposing new eligibility requirements on Beth Rochel. The ED acted in accordance with section 1141(a)(5)(B), 34 C.F.R. § 668.-2(a)(5)(iv), and the August 20, 1979, rule on both occasions.

The Constitution does not require a hearing where there is no dispute of fact to decide. *Codd v. Velger*, 429 U.S. 624, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977) (per curiam). There is no dispute as to the critical facts of this case. Plaintiff admits that none of the three students it listed in its October 1980 3IC application actually transfered and enrolled in Touro College. Plaintiff's Statement ¶ 13. Plaintiff was never in compliance with section 1141(a)(5)(B), 34 C.F.R. 668.2(a)(5)(iv), and the August 20, 1970, rule and, accordingly, never had a right to receive student financial aid funds under the HEA. Plaintiff must return the mistakenly disbursed student financial aid funds to the ED.