**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Applicant,**

v.

**AIR PRODUCTS AND CHEMICALS, INC., Respondent.**

**No. P–MISC.–1/413–10–RV.**

United States District Court,
N.D. Florida,
Pensacola Division.

Aug. 12, 1986.

Isaisa Ortiz, Sr. Trial Atty., E.E.O.C.–Miami Dist. Office, Miami, Fla., for applicant.

Ralph A. Peterson, Beggs & Lane, Pensacola, Fla., for respondent.

Paula Drummond, Pensacola, Fla., for Charging Party, Janice Griffin.

## ORDER

VINSON, District Judge.

This is an action brought by the Equal Employment Opportunity Commission (EEOC) for the enforcement of a subpoena, *duces tecum,* issued by the Commission, pursuant to Sections 709 and 710 of Title VII of the Civil Rights Act of 1964, as amended [42 U.S.C. §§ 2000e–8, 9]. Jurisdiction is conferred upon the Court by Sections 706(f)(3), 709(c), and 710 of Title VII [42 U.S.C. §§ 2000e–5(f)(3), 8, and 9]. By order entered herein on April 11, 1986, Air Products and Chemicals, Inc., the respondent, was ordered to appear on May 9, 1986, and show cause why an order of this Court should not be issued directing the respondent to comply with the subpoena.

On May 9, 1986, an evidentiary hearing was held in this case pursuant to the order to show cause. Following the hearing, the parties were permitted to file memoranda addressing some of the issues raised by the parties.

### Background

The question presented is whether the complaint of the charging party, Janice Griffin, was timely filed under the provi-

sions of the Civil Rights Act, so as to properly invoke the EEOC's investigative jurisdiction. Section 706(c) of the Civil Rights Act provides that no charge may be filed with the EEOC before the expiration of 60 days after proceedings have been commenced with a state agency, unless the state proceedings have been earlier terminated. Similarly, Section 706(e) of the Civil Rights Act requires an aggrieved person, who has initially filed charges with a state agency, to file a charge with the EEOC within 300 days after the alleged unlawful employment practice has occurred, or within 30 days after receiving notice that the state agency has terminated its proceedings, whichever is earlier.

In *Mohasco Corp. v. Silver*, 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980), the Supreme Court interpreted these sections together to require an aggrieved party to file his claim with the state agency within 240 days of the alleged unlawful employment practice, so that the state agency will have at least 60 days before the EEOC can consider the claim, and so that the filing with the EEOC is within the 300–day overall limit. If the aggrieved party files his charge after 240 days, the only way the EEOC can consider the claim is for the state agency to terminate its proceedings and for the party to file a charge with the EEOC, all within the 300–day overall limit.

Under Section 706(c) of the Civil Rights Act, "no charge may be filed" with the EEOC before the expiration of 60 days after proceedings have been commenced with the appropriate state agency. When the charges are initially filed with the EEOC, the Supreme Court has held, in *Love v. Pullman Co.*, 404 U.S. 522, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972), that no second "filing" is required, but the charge will be treated as "automatically" filed upon termination of the state proceedings or 60 days after initiation of the state proceedings, whichever is earlier. *See Moore v.*

*Sunbeam Corporation*, 459 F.2d 811, 820–26 (7th Cir.1972), adopted in *Mohasco Corp. v. Silver*, 447 U.S. 807, 814, n. 16, 100 S.Ct. 2486, 2491, n. 16, 65 L.Ed.2d 532, 541, n. 16 (1980).

Here, Air Products and Chemicals, Inc. terminated the employment of the charging party, Janice Griffin, on May 18, 1983. On March 13, 1984, she filed a charge with the EEOC.[1] March 13, 1984, was the 300th day after Janice Griffin's termination. On March 26, 1984 (day 313), the EEOC deferred this charge to the Florida Commission on Human Relations (FCHR) for action. On May 29, 1984 (day 377), the FCHR terminated its proceedings.

Almost a year later, on May 12, 1985, the EEOC's Miami District Director issued and caused to be served upon Air Products the subpoena *duces tecum* which is the subject of this litigation. On May 21, 1985, Air Products petitioned the Miami district office to revoke the subpoena as being untimely. On July 16, 1985, the Miami district office denied this request, and, subsequently, on October 7, 1985, the EEOC denied Air Products' appeal. The EEOC filed its application with this Court on April 8, 1986.

### The Issues

■ (1) *Scope of judicial review in a subpoena enforcement proceeding.* The initial, and potentially most troublesome, issue raised in this case is the proper scope of judicial review of the EEOC's subpoena enforcement powers. As the EEOC has emphasized, an administrative subpoena should be enforced by the court if the investigation is within the authority of the agency, if the subpoena is not too indefinite or burdensome, and if the information sought is reasonably relevant. *Cf. United States v. Morton Salt Co.*, 338 U.S. 632, 652, 70 S.Ct. 357, 368–69, 94 L.Ed. 401 (1950); *EEOC v. Chrysler Corp.*, 567 F.2d 754, 755 (8th Cir.1977). Air Products has

---

1. Subsequent to the evidentiary hearing, the EEOC submitted an affidavit by the charging party's attorney, indicating that a copy of the charge was also filed with the Florida Commission of Human Relations (FCHR) on that same date. This is not technically in evidence, however, and there is no indication that the FCHR took any action at all upon a charge filed directly with the FCHR. All the activity of record deals only with the charge filed with the EEOC.

not contested the EEOC's investigation as being too indefinite, burdensome, or irrelevant. Instead, the inquiry is directed toward the authority of the EEOC, and its jurisdiction to make investigations, if the complaint was not timely filed as required by statute.

The EEOC's position is that jurisdictional issues are not for the Court to decide in subpoena enforcement proceedings, citing *Endicott Johnson v. Perkins,* 317 U.S. 501, 509, 63 S.Ct. 339, 343, 87 L.Ed. 424 (1943); *EEOC v. Roadway Express,* 750 F.2d 40 (6th Cir.1984); *EEOC v. Children's Hospital Medical Center,* 719 F.2d 1426, 1428 (9th Cir.1983); *EEOC v. K–Mart Corp.,* 694 F.2d 1055, 1064 (6th Cir.1982); *EEOC v. South Carolina National Bank,* 562 F.2d 329, 332 (4th Cir.1977); and 1 K. Davis, *Administrative Law Treatise,* § 3.12 at 220 (1958).

■ A review of the authority granted to the EEOC under the Civil Rights Act, however, reveals that the EEOC's general position is not well founded. Setting aside for the moment the issue of a continuing violation, which will be subsequently addressed, Congress made it very clear that the EEOC's authority to make investigations such as that involved in this proceeding depends on a proper complaint being filed within 300 days following the alleged unlawful employment practice. Its authority, therefore, is expressly conditioned upon there being a charge properly filed under Section 2000e–5 of the Civil Rights Act, and the EEOC may only subpoena evidence that relates to properly filed charges under investigation or in question.

An untimely filed charge cannot be deemed a valid charge. *Cf. IBEW, Local No. 5 v. EEOC,* 398 F.2d 248, 251–52 (3rd Cir.1968). The Supreme Court has made it very clear, in addressing the notice requirements of Section 706 of Title VII, that a valid charge is a jurisdictional prerequisite to judicial enforcement of a subpoena issued by the EEOC:

> If the EEOC were able to insist that an employer obey a subpoena despite the failure of the complainant to file a valid

charge, congress' desire to prevent the Commission from exercising unconstrained investigative authority would be thwarted. Accordingly, we hold that the existence of a charge that meets the requirements set forth in § 706(b), 42 U.S.C. § 2000e–5(b), is a jurisdictional prerequisite to judicial enforcement of a subpoena issued by the EEOC.

> *EEOC v. Shell Oil Co.,* 446 [466] U.S. 54, 104 S.Ct. 1621, 1629, 80 L.Ed.2d 41 (1984).

It naturally follows that a timely filing of Janice Griffin's charge with the EEOC is a jurisdictional prerequisite in this subpoena enforcement proceeding. *See also EEOC v. K–Mart Corp., supra,* 694 F.2d at 1061; *Pacific Maritime Ass'n v. Quinn,* 491 F.2d 1294, 1295 (9th Cir.1974); *Graniteville Co. (Sibley Div.) v. EEOC,* 438 F.2d 32 (4th Cir.1971).

I agree with the EEOC that, if there is an underlying factual dispute about the nature of the charge, or about the reasonable cause or probable cause elements of the investigation, then a subpoena enforcement proceeding is probably not the proper forum to resolve such substantive issues. I also agree that a legitimate factual dispute regarding a continuing violation may better be resolved in a forum other than the subpoena enforcement proceeding. However, with regard to the termination of employment of Janice Griffin on May 18, 1983, there is no factual dispute, nor could any event be more distinctly identifiable. I conclude that the issue of timeliness is jurisdictional as to the EEOC's enforcement authority, and is a matter ripe for consideration in this proceeding.

■ (2) *Whether there is a continuing violation.* The EEOC has also contended that, since the complaint alleges a continuing violation, timeliness is not an issue in the enforcement of a subpoena. Superficially, that appears to be a sound argument. Upon closer examination of the charge in this case, however, the EEOC's argument does not jibe with the facts or the law.

First, it is apparent that the EEOC has not treated Ms. Griffin's charge as a continuing violation, but, instead, has treated it as a discrete violation to which the 300-day time limit squarely applies. The EEOC's reliance upon the worksharing agreement with the State of Florida, for example, would not be applicable if the violation was deemed to be continuing in nature. More importantly, the charge itself relates to alleged discriminatory treatment prior to Ms. Griffin's termination on May 18, 1983, and the actual termination on May 18, 1983. The only alleged continuing violation is a claim that Ms. Griffin is not receiving compensation benefits to which she is entitled as a result of her termination. As the Supreme Court has noted, the proper time focus is on the time of the discriminatory act, not the point at which the consequences of the act may be manifested. *Chardon v. Fernandez*, 454 U.S. 6, 102 S.Ct. 28, 70 L.Ed.2d 6 (1982); *Delaware State College v. Ricks*, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980). Here, that alleged discriminatory act is the termination itself. Additionally, the undisputed evidence from the testimony and exhibits received during the evidentiary hearing is to the effect that a terminated employee has no right to compensation or other benefits. Both Ms. Griffin and Richard H. Albert testified that a terminated employee had no rights regarding disability compensation or other compensation benefits.

Ms. Griffin's claim regarding a continuing violation reads: "I was terminated on May 18, 1983 and have since been denied compensation benefits which male employees similarly situated enjoy." Despite the EEOC's vigorous argument that this constitutes a claim of a continuing violation, I fail to so find. Nor do I find that there is even a legitimate factual or legal issue surrounding the "continuing" nature of the charge. Factually, there is absolutely no evidence to support a charge of a continuing violation when the charge is clearly tied to an employment termination and no terminated employee has any right to further compensation benefits. If the charge could somehow be construed as a charge of dis-criminatory failure to rehire (which it clearly does *not* charge by the plain language), then it should be treated separately as an independent charge, and not as a continuing charge. Legally, *Ricks* and *Chardon* require me to focus upon the termination of employment as the keying event for purposes of timing analysis.

In short, I find that it is entirely appropriate for this Court to look behind the claim of "continuing" discrimination, so long as it can be done in a summary fashion. Ms. Griffin's claim is simply that, since termination, she has "been denied compensation benefits which male employees similarly situated enjoy." Not only is that factually unsupported, but it is also legally insufficient under the *Ricks-Chardon* rule. There being no genuine issue of fact or law regarding such a continuing charge, I find that the timeliness issue must be resolved solely around the complainant's discharge on May 18, 1983.

■ (3) *Was the charge timely "filed" with the EEOC?* Both sides agree that the statutory language, as construed by the Supreme Court in *Mohasco Corp. v. Silver*, *supra*, requires, under the circumstances presented here, that the complaint be filed with the EEOC within 300 days from the alleged discriminatory event. The parties also agree that the complaint does not have to be filed with the FCHR within Florida's 180-day time limit, so long as it is filed within the limit set by Title VII. *Thomas v. Florida Power & Light Co.*, 764 F.2d 768 (11th Cir.1985). It is also agreed that the complaint does not have to be refiled with the EEOC if it is first filed with the EEOC and then deferred to the state agency. *Love v. Pullman Co.*, *supra*. However, the Supreme Court has made it clear that if a complainant files with the state agency more than 240 days after the alleged discriminatory employment practice, but not more than 300 days after the practice complained of, the complainant's right to seek relief under Title VII will be preserved only "if the state happens to complete its consideration of the charge prior to the end of the 300-day period." *Mohas-*

co Corp. v. Silver, supra, 447 U.S. at 814, n. 16, 100 S.Ct. at 2491, n. 16.

The EEOC relies upon *Isaac v. Harvard University*, 769 F.2d 817 (1st Cir.1985) for the proposition that actual termination by the state agency is not necessarily required, and that a federal-state working agreement can provide a basis for a "waiver" of the state's investigation responsibilities. The State of Florida and the EEOC have such a working agreement, which the EEOC maintains was intended to meet the *Mohasco Corp. v. Silver, supra,* situation, and provides that the state waives its right to exclusively process:

> (C). Charges initially received by EEOC or the Florida Commission more than 180 days after the date of the last alleged act of discrimination.

Despite the EEOC's reliance upon the working agreement, however, it is clear that the EEOC actually *did* defer the matter to the FCHR for 60 days on day 313. It is equally clear that the FCHR accepted the charge, reviewed it, and then terminated its proceeding on day 377. Under these circumstances, the charge was not "automatically" (as per *Love v. Pullman Co., supra*) filed with the EEOC until day 373, which is clearly outside the 300–day limit. As the Supreme Court has emphasized in *Mohasco Corp. v. Silver, supra,* Congress did not intend to extend the maximum period for complainants in deferral states with a working agreement beyond the 300 days set out in the statute. The only way that Ms. Griffin's charge could be deemed timely filed with the EEOC is if the charge had been deferred to the FCHR on March 13, 1984 (day 300, the day it was filed with the EEOC), and the FCHR had completed its consideration of the charge or, in some clear and unambiguous manner, advised the EEOC that it would not investigate the charge, and, thereby, terminated its proceedings of the charge on that same date. Of course, that did not happen.

Some further discussion of the EEOC–FCHR working agreement is in order. The EEOC contends that the effect of the working agreement is that when Ms. Griffin's charge was received by the EEOC on the 300th day, the FCHR's proceedings were commenced and terminated simultaneously. As mentioned above, however, neither the EEOC nor the FCHR treated Miss Griffin's charge in that manner. The EEOC actually deferred the charge to the FCHR for initial processing on March 26, 1984, with the express purpose of having the FCHR process the charge. The EEOC specifically informed Air Products that the EEOC would not have jurisdiction until the FCHR terminated its proceedings, or until 60 days had passed, whichever occurred first. Then the FCHR reviewed the charge, found it to be untimely filed, and returned it to the EEOC on May 29, 1984 (day 377).

It goes without saying that neither the EEOC's regulations and its interpretation of the statute, nor the terms of any worksharing agreement between the EEOC and any state agency, can alter or change the clear requirements of the statute itself. Paragraph C of Article V of the working agreement cannot abrogate the statutory requirement that a proceeding be commenced or a charge be filed in the state deferral agency before the 300–day limitation period can be invoked. It should also be noted that Ms. Griffin's charge contained both a Title VII claim and a state claim of discrimination based on a handicap. The working agreement does not appear to cover this type of charge.

Recognizing that its actions on Ms. Griffin's charge are inconsistent with its position advanced here, the EEOC has submitted an affidavit by Frederico Costales, District Director of the EEOC's Miami office, which states:

> The deferral of the Griffin charge by the EEOC on March 26, 1984, to the Florida Commission was inappropriate under the worksharing agreement, and has no jurisdictional effect.

First, this affidavit was filed after the hearing, and is not technically in evidence. Second, considering the affidavit as evidence, it does nothing more than state that the EEOC now believes that it made a mistake in deferring the matter to the

FCHR. Third, even assuming that the EEOC's deferral to the FCHR was a mistake which should be overlooked by this Court, the EEOC's reliance upon the working agreement is, nevertheless, overly broad.

The working agreement merely provides that the FCHR waives its right to *"exclusively process"* charges received by either the EEOC or the FCHR more than 180 days after the date of the alleged discriminatory act. It does not contain any language that otherwise addresses the Title VII requirements. It omits any reference to the filing or institution of proceedings before the FCHR. Both the statute and the Supreme Court's interpretation of the statute in *Mohasco Corp. v. Silver, supra,* make it clear that the Title VII proceedings must be instituted or commenced under the state or local law with the state's deferral agency before the EEOC can proceed to act. This initial filing with the deferral agency can be done either by the complainant or by the EEOC on behalf of the complainant. The agreement could make it clear that a filing with the EEOC would constitute a filing with the FCHR ... but it does not.

Under Florida law and the regulations and rules of the FCHR, a proceeding before the FCHR is commenced when a complaint is *filed* with that state agency. § 760.10(10), *Fla.Stat.* (1983); Fla.Adm. C.R. 22T–9.01(2). The rules of the FCHR provide:

> (1) "Filing" or "file" with the [FCHR], means actual receipt of a document by the Clerk of the [FCHR] at its office, ....
> [Fla.Adm.C.R. 22T–8.04(a) ]

Here, even assuming that there was a simultaneous filing of the charge with the FCHR, both the EEOC and the FCHR took action only with respect to the charge filed by Ms. Griffin with the EEOC. That charge was not deferred by the EEOC until March 26, 1984 (day 313), and the FCHR did not "terminate" its review until May 29, 1984 (day 377). Therefore, under the *Mohasco Corp. v. Silver* methodology, the fil-ing must be calculated as occurring 60 days after deferral, or on May 25, 1984.

The Supreme Court has made it very clear that the mere filing of a charge with the EEOC, with subsequent or concurrent deferral to the state agency, does not result in an "automatic" filing with the EEOC until the termination of the state proceedings. *Mohasco Corp. v. Silver, supra,* 447 U.S. at 817–18, 100 S.Ct. at 2492–93.

The working agreement also fails to indicate, in any way, that its "waiver" can be treated by the EEOC as a termination of proceedings for purposes of Title VII. I cannot construe the plain language of the agreement's paragraph C to mean that. *Isaac v. Harvard University, supra,* does not hold that a working agreement, alone, is sufficient to meet the "termination" requirement. There, the working agreement served as the basis of the state's decision not to process the charge: the state's response to the deferral was "will not process this charge ... per agreement [with] EEOC." [*See* 769 F.2d at 824] The Court in *Isaac* properly found that the state termination had occurred when the state transmitted this response back to the EEOC. In those working agreements where, as here, the state only waives the right to *exclusively* process the claim, it is apparent that some additional communication between the state agency and the EEOC is required; that the mere existence of such a waiver does not automatically result in a "termination" of the state proceeding. In those states where the state waives *complete* jurisdiction to further process the claim [*see Isaac,* 769 F.2d at 825, n. 11], there may be some basis for such an interpretation ... but that situation is not before me.

Thus, even disregarding what the EEOC and the FCHR *actually did* with respect to Ms. Griffin's charge, I do not find any operative provisions in the working agreement that would automatically meet the Title VII requirements and accomplish an instantaneous EEOC filing on the 300th day, as the EEOC contends.

(4) *Conclusion.* For the reasons set forth above, I find that the charge of Janice Griffin was filed more than 300 days after the alleged discriminatory act occurred and is, therefore, outside the scope of Title VII. I also find that the charge is not a "continuing" charge. As a consequence, there is no valid and proper charge for the EEOC to investigate, and it is without jurisdiction to issue the subpoena in question here. Accordingly, the EEOC's application is DENIED, and the subpoena *duces tecum* issued by the EEOC to Air Products and Chemicals, Inc. is hereby QUASHED.

The Court reserves jurisdiction to consider the matter of costs and any collateral issues that the parties may bring to the Court's attention within 10 days from the date of this order.