James **DUNN, John Goebel, Individually and on behalf of Similarly Situated County Fire Department Employees, and George Lehner,**

v.

**COBB COUNTY; D.W. Hilton, and Colonel John McLaughlin, in both their Official and Individual Capacities as Fire Chief and Deputy Chief of the Cobb County Fire Department.**

Civ. No. 1:90–cv–2695–ODE.

United States District Court, N.D. Georgia, Atlanta Division.

April 12, 1991.

**910**

Allan Leroy Parks, Jr., Kirwan, Goger, Chesin & Parks, Atlanta, Ga., for plaintiffs.

John Eugene Thompson, Mallory Erle Phillips, III, Mairen C. Kelly, Fisher & Phillips, Atlanta, Ga., for defendants.

## ORDER

ORINDA D. EVANS, District Judge.

This action brought under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201, *et seq.*, is before the court on Defendants' motion to dismiss pursuant to Fed.R. Civ.P. 12(b)(6).

The relevant facts are brief. Plaintiffs are all firefighters employed by Cobb County. In 1976 the Supreme Court barred application of the FLSA, including its overtime provisions, to State and municipal employers on Tenth Amendment grounds. *Nat'l League of Cities v. Usery,* 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976). Nine years later, the Supreme Court overruled *Nat'l League of Cities* in *Garcia v. San Antonio Metropolitan Transit Auth.,* 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985). The complaint contends that Defendants unilaterally lowered Plaintiffs' base rate of pay on June 30, 1985, in order to ameliorate the effects of having to pay overtime to the firefighters, thereby circumventing *Garcia* and the amendments to FLSA which followed it, Pub.L. 99–150, Nov. 14, 1985, 99 Stat. 791, codified at scattered sections of 29 U.S.C. Plaintiffs bring suit under 29 U.S.C. § 216(b), which provides a cause of action for violations of the substantive provisions of the FLSA. A second count, which is not addressed by this motion, alleges retaliatory action by Defendants.

Two of the Plaintiffs were employed as firefighters on June 30, 1985, and one has been hired since then.

■ Generally, in order to show that an employer discriminated against an employee in regards to his rights under the FLSA (for example, by lowering his base pay in order to avoid the effect of the overtime provisions of the FLSA, 29 U.S.C. § 207(a)), an employee must show that the discriminatory act was in retaliation for the employee's participation in a protected activity. 29 U.S.C. 215(a)(3).[1] Congress amended the FLSA in 1985 to exempt public employers for one year, ending on August 1, 1986, from compliance with *Garcia.* Pub.L. 99–150, Nov. 14, 1985, 99 Stat. 791, codified at scattered sections of 29 U.S.C. The eighth section of that same amendment, however, also made it simpler for an employee to show that a reduction in base pay during that period was discriminatory. Section eight of the amendment reads:

> A public agency which is a State, political subdivision of a State, or an interstate governmental agency and which discriminates or has discriminated against an employee with respect to the employee's wages or other terms or conditions of employment because on or after February 19, 1985, the employee asserted coverage under section 7 of the Fair Labor Standards Act of 1938 [29 U.S.C. § 207] shall be held to have violated section 15(a)(3) of such Act [29 U.S.C. § 215(a)(3)]. The protection against discrimination afforded by the preceding sentence shall be available after August 1, 1986 only for an employee who takes an action described in section 15(a)(3) of such Act.

Pub.L. 99–150, § 8, Nov. 14, 1985, 99 Stat. 791, 29 U.S.C. § 215 note (hereinafter, "section 8"). Plaintiffs contend that after they asserted coverage under the FLSA, Defen-

---

1. 29 U.S.C. 215(a)(3) reads in pertinent part: [I]t shall be unlawful for any person—to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or

caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee ...

dants made the disputed reduction in base pay.[2]

Defendants bring this motion to dismiss on the theory that the statute of limitations has run. 29 U.S.C. § 255(a) states a two year statute of limitations for non-wilful violations and a three-year limitation for wilful violations of the FLSA. Defendants argue that the cause of action accrued on June 30, 1985, when the unilateral reduction in pay occurred. This action was filed December 4, 1990. Therefore, Defendants contend, even taking the facts as Plaintiffs present them, the statute of limitations has run, barring this action.

■ Plaintiffs admit all of the facts set forth by Defendants,[3] however, they contend that the issuance of paychecks calculated on the reduced base pay rate in the ensuing years represents a "continuing violation" creating a new accrual date. The issue before the court is the applicability of the judicially-created "continuing violation" doctrine to section 8 of the FLSA.

The Supreme Court's most recent word on the continuing violation doctrine came in *Lorance v. AT & T Technologies, Inc.*, 490 U.S. 900, 109 S.Ct. 2261, 104 L.Ed.2d 961 (1989). *Lorance* concerned a seniority policy which allegedly violated portions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. The policy had been adopted long outside the statute of limitation for Title VII actions set forth in 42 U.S.C. § 2000e–5(e). Plaintiffs, however, argued that the statute of limitations should not have begun to run until Plaintiffs felt the effects of the seniority system

which occurred much later when they were laid off during an economic slump. *Lorance*, 490 U.S. at 902–03, 109 S.Ct. at 2264, 104 L.Ed.2d at 969.

The Court declined to view the lay-offs as a continuing or distinct violation, relying on *Delaware State College v. Ricks*, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980), and *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977). In *Ricks* the Court rejected the characterization of an employment discharge pursuant to an earlier discriminatory denial of tenure as a continuation of the earlier violation. *Evans* involved a flight attendant who had been discharged outside the limitations period for allegedly discriminatory reasons. She was later rehired. Pursuant to a facially neutral seniority system, however, she was denied seniority for her earlier service. The Court agreed with the plaintiff that the seniority system gave "present effect to a past act of discrimination," but nonetheless found no continuing violation, stating:

> a challenge to a neutral system may not be predicated on the mere fact that a past event which has no present legal significance has affected the calculation of seniority credit, even if the past event might at one time have justified a valid claim against the employer.

431 U.S. at 560, 97 S.Ct. at 1890, *quoted in Lorance*, 490 U.S. at 908, 109 S.Ct. at 2267, 104 L.Ed.2d at 972.

Applying *Ricks* and *Evans* to the facially neutral seniority system before it in *Lorance*, the Court determined that the layoffs

---

**2.** Defendants do not dispute for purposes of this motion that Plaintiffs asserted coverage under section 8. The assertion of coverage provision and the rest of section 8 are discussed in *Blanton v. City of Murfreesboro*, 658 F.Supp. 1540 (M.D.Tenn.1987), *aff'd in part, rev'd in part on other grounds*, 856 F.2d 731 (6th Cir.1988).

**3.** The Eleventh Circuit Court of Appeals has stated the standard for dismissal under Fed.R. Civ.P. 12(b)(6):

> To state a claim for relief, Rule 8 of the Federal Rules of Civil Procedure merely requires "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gib-*

*son*, 355 U.S. 41, 47, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). It is well established that a complaint is not subject to dismissal unless it appears to a certainty that no relief can be granted under any set of facts that can be proved in support of the complaint's allegations. *Id.* at 45, 78 S.Ct. at 101. Generally, the Federal Rules of Civil Procedure do not require a claimant to set forth in detail the facts upon which he bases his claim. *Id.* at 47, 78 S.Ct. at 102. Rather, cases in which the facts do not establish a true controversy are more properly disposed of through summary judgment.

*Arnold v. Board of Educ. of Escambia County*, 880 F.2d 305, 309 (11th Cir.1989).

were not continuing violations. Rather, the Court found them to be "wholly dependent on discriminatory conduct [the adoption of the seniority system] occurring well outside the period of limitations...." *Lorance*, 490 U.S. at 908, 109 S.Ct. at 2267, 104 L.Ed.2d at 972. Plaintiffs justified their delay in challenging the discriminatory conduct by stressing the speculative nature of the harm at the time of the seniority system's adoption. The Court, however, found the reduction in contract rights to be a concrete harm. The Court reasoned that the plaintiffs' rights under the contract had perceptibly been diminished, which, like the denial of tenure in *Ricks*, had put the plaintiffs on notice that they had suffered a harm, albeit one which would reach its " 'most painful' " point later. *Lorance*, 490 U.S. at 907, n. 3, 109 S.Ct. at 2266, n. 3, 104 L.Ed.2d at 972, n. 3 (quoting *Ricks*, 449 U.S. at 258, 101 S.Ct. at 504).

The Court of Appeals for the Eleventh Circuit has not yet had occasion to apply *Lorance*. Prior to *Lorance*, however, the continuing violation doctrine had been applied in cases where racial or sex-related animus motivated a wage differential. *Bazemore v. Friday*, 478 U.S. 385, 106 S.Ct. 3000, 92 L.Ed.2d 315 (1986) (race discrimination under Title VII); *Long v. Florida*, 805 F.2d 1542, 1546–47 (11th Cir.1986) (distinct Title VII violations possible where each dispersal of periodic retirement benefits is based on unlawful sex-distinct mortality tables); *Hodgson v. Behrens Drug Co.*, 475 F.2d 1041, 1050–51 (5th Cir.), *cert. denied*, 414 U.S. 822, 94 S.Ct. 121, 38 L.Ed.2d 55 (1973) (sex discrimination under the Equal Pay Act amendment to FLSA, 29 U.S.C. § 206(d)(1)). Similarly, wages which fail to meet the minimum wage or overtime requirements of the FLSA constitute a new violation with every paycheck. *Halferty v. Pulse Drug Co.*, 821 F.2d 261, 270–71 (5th Cir.1987).

Cases involving wage differentials based on illicit racial and sexual distinctions and facially inadequate wage rates, however, are inapposite to the case at bar. Unlike the seniority system in *Lorance*, or the reduction in pay in the instant case, each unequal paycheck in those cases was facially discriminatory.[4] That is, independent of any prior time-barred discriminatory act, each of the paychecks represented a new violation by itself either discriminating on the basis of race or sex or failing to meet FLSA standards. The contrast between that type of case and the type in *Lorance* and at bar can be illustrated by contrast to another pre-*Lorance* decision of this Circuit. *Allen v. United States Steel Corp.*, 665 F.2d 689 (5th Cir. Unit B, 1982). In *Allen*, allegedly discriminatory layoffs and recall denials, which occurred outside the period of limitations for Title VII actions, resulted in continuing reductions in benefits to the plaintiffs. The plaintiffs contended that the facially neutral benefit reductions constituted a continuation of the discriminatory layoffs. Following *Evans*, the Court found that no continuing violation occurred because the benefits plan itself was neither part of the original discrimination nor discriminatory itself. *Id.* at 693. Thus, although the Eleventh Circuit has not yet interpreted *Lorance*, its prior cases support the central thrust of the decision: that facially neutral practices which give effect to discrete past acts of discrimination do not constitute continuing violations. Nonetheless, the field of inquiry directly before the court, the viability of a continuing violation theory in actions based on section 8 of the FLSA in light of *Lorance*, is open in this Circuit.

The Fifth Circuit, however, addressed the issue in *Hendrix v. City of Yazoo City*, 911 F.2d 1102 (5th Cir.1990). The facts of *Hendrix*, as recited by Judge Rubin writing for the Court, are strikingly similar to those of the case *sub judice*.

On April 15, 1986, the City of Yazoo City unilaterally reduced the base salary of its firefighters. Three years and one month later, May 15, 1989, 21 current and former employees sued the city, alleging that the reductions were made

---

4. *Beavers v. Amer. Cast Iron Pipe Co.*, 751 F.Supp. 956 (N.D.Ala.1990), points out this distinction between facially discriminatory practices, such as those constituting the continuing violation in *Bazemore*, and the facially neutral seniority plan in *Lorance*.

in anticipation of increased payroll costs resulting from the application to it of the 1985 FLSA amendments. On motion by the defendants, the district court dismissed the complaint as barred by the FLSA's three-year statute of limitations for willful violations.

911 F.2d at 1103. The issue which confronted the Court was also framed similarly.

> The issue, therefore, is whether this reduction in pay was a single act of discrimination under the FLSA, hence barred by its three year statute of limitations, or whether the reduction effected in each subsequent paycheck constitutes a violation of the Act, thus making the complaint timely, at least in part.

*Id.*

The *Hendrix* Court describes two types of true continuing violations. The first involves an unlawful act outside the limitation period which is related to unlawful acts within the period. The second occurs where "an initial violation, outside the statute of limitations, is repeated later...." *Id.* The Court then turns to the *Evans* and *Lorance* line of cases, from which it derives the corollary that when only one discriminatory act occurs, and it is outside the limitations period, the effects of that act are not continuing violations renewing the limitations period. *Id.* at 1104. The Court also declined to cabin the reasoning of *Lorance* to seniority cases under Title VII.[5] In so doing, the Court summed up the distinction between continuing violations and the mere effects of past discrimination:

> As *Lorance* makes clear, the distinction does not turn on the type of discrimination, but on whether the practice at issue is part of, or a repetition of, a past dis-

criminatory act, in which case there is a continuing violation, or whether it is facially neutral, simply giving effect to prior discrimination, in which case there is no continuing violation.

*Id.* Applying that test to the facts before it, the Court emphasized the facial neutrality of the payment plan once the reduction had been made in holding that the claim was barred by the time limitation in 29 U.S.C. § 255.

> Here, the firefighters were fully aware of the City's reduction in their base rate of pay when they received their April 15, 1986 paychecks. The reduction in pay was itself the violation; subsequent pay packets simply gave it continuing effect in a facially neutral manner. We therefore hold that there was no continuing violation that would permit the firefighters to maintain their suit against the City under the anti-discrimination provision of the 1985 FLSA amendments.

*Id.* at 1105.

Defendants press the reasoning and result of *Lorance* and *Hendrix* upon the court. Plaintiffs respond with three arguments. First, they press the facial discrimination cases, *e.g.*, *Hodgson*, 475 F.2d 1041, which the court distinguishes above. Second, they argue that because the FLSA is remedial in nature, application of the statute of limitations should be narrow. That argument, however, flies in the face of the Supreme Court's reasoning in *Ricks*, *Evans* and *Lorance* which gave full effect to the statute of limitations under Title VII, another remedial statute. Although true exemptions from the coverage of a remedial statute may deserve niggardly construction, as Plaintiffs urge, explicit time limitations set forth in a remedial statutory

---

5. Although, as *Hendrix* points out, the *Lorance* opinion speaks in broad terms about the continuing violation doctrine generally, seniority systems are

> "afforded special treatment under Title VII" by reason of § 703(h) [42 U.S.C. § 2000e-2(h)], which states: "Notwithstanding any other provision of this subchapter, it shall not be an unlawful employment practice for an employer to apply different standards of compensation, or different terms, condition, or privileges of employment pursuant to

a bona fide seniority ... system, ... provided that such differences are not the result of an intention to discriminate because of race, color, religion, sex, or national origin...."

*Lorance*, 490 U.S. at 904–05, 109 S.Ct. at 2265, 104 L.Ed.2d at 970 (citations omitted). The Court in *Lorance*, however, relied on the limits of the continuing violation doctrine as explained in non-seniority cases like *Ricks* and *Evans*. Regarding § 703(h), see generally, *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977).

scheme are an integral part of the remedial policy itself, serving to ensure that disputes are resolved quickly. *See, Mohasco v. Silver,* 447 U.S. 807, 825–26, 100 S.Ct. 2486, 2496–97, 65 L.Ed.2d 532 (1980) (discussing the Congressional intent to "encourage prompt processing of all charges of employment discrimination" which lies behind the time limitations in Title VII). As the refusal to apply the continuing violation doctrine in *Ricks, Evans* and *Lorance* makes clear, that policy deserves vindication.

Third, Plaintiffs raise an interesting and novel equitable argument. One of the named plaintiffs, John Goebel, was hired after the reduction in pay took place. Mr. Goebel, therefore, is affected by the allegedly discriminatory past act, but did not have standing to challenge that act at the time it occurred. Plaintiffs argue that if no continuing violation is found, Mr. Goebel will never have had an opportunity to seek redress for his unlawfully low base pay. In support of this reasoning Plaintiffs cite *Alexander v. City of Plainview,* 694 F.Supp. 221, 224 (N.D.Tex.1988).

The district court in *Alexander,* however, expressly declined to treat the issues before it under the continuing violation theory. 694 F.Supp. at 223. Indeed, the complaint in *Alexander* was filed within the time limits set out in 29 U.S.C. § 255. Thus, although the district court allowed later-hired employees to recover, it did not hold that their presence invoked the continuing violation doctrine. Moreover, the Fifth Circuit's recent decision in *Hendrix,* which Plaintiffs neither discuss nor distinguish, would supersede *Alexander.*

Plaintiffs' argument is also unpersuasive on its substantive merits. First, the statutes of limitations contained in remedial statutes such as Title VII and the FLSA serve a real purpose: the prevention of stale claims and the quick resolution of often testy disputes. *See, Mohasco,* 447 U.S. at 825–26, 100 S.Ct. at 2496–97. Labor peace would not be well-served if, despite explicit limitation periods, employers were to be subject to phoenix-like actions which, although time-barred as to the origi-

nal plaintiffs, rise from the dead every time a new hire takes place. For example, if the plaintiffs in *Lorance* were able to avoid their own failure to file timely merely by waiting for a new hire, the dispute over the adoption of the seniority policy could be extended indefinitely. The purpose of having a statute of limitations which serves to truncate disputes would, under such an extension of the continuing violation doctrine, be eviscerated.

Accordingly, Defendants' motion to dismiss is GRANTED.

SO ORDERED.